IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CR 06-2173 RB |
| | ) | |
| BRIAN RUSSELL DOLAN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |


## MEMORANDUM OPINION AND RESTITUTION ORDER

**THIS MATTER** comes before the Court on Defendant Brian Russell Dolan's February 4, 2008 oral objection to restitution, which alleged that the Court lacked jurisdiction. (*See* Feb. 4 Sentencing Hr'g Tr. [Doc. 49] at 3). The Court ordered both parties to brief the matter.[1] (*See id.* at 4-5). The Court heard oral argument on April 11, 2008. (Apr. 11 Sentencing Hr'g Tr. [not yet docketed]). Having considered the parties' submissions and oral arguments, and having also conducted independent research, the Court **CONCLUDES** that it **RETAINS JURISDICTION** under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664. Accordingly the Court hereby **ORDERS** Defendant to pay restitution in the amount of $104,649.78 in nominal periodic payments of $250.00 per month. *Id.* at § 3664(f)(3)(B).

---

[1] The Court also ordered briefing on Defendant's ability to pay restitution. (Feb. 4 Sentencing Hr'g Tr. at 5).

## I.    BACKGROUND

Pursuant to a plea agreement, Defendant Brian Russell Dolan, a member of the Mescalero Apache Tribe, pled guilty to assault resulting in serious bodily injury of another tribal member, Evan Tissnolthtos, on the Mescalero Apache Reservation, contrary to 18 U.S.C. 113(a)(6).  (Plea Agreement [Doc. 32] at 3-4).  *See also* 18 U.S.C. § 1153.  The Plea Agreement also reflects an understanding that Defendant would pay such "restitution as may be ordered by the Court."  (*Id.* at ¶ 4(e)).

According to the May 30, 2007, Presentence Report ("PSR"), Mr. Tissnolthtos suffered severe head and face injuries, as well as a broken wrist, at the hands of Defendant.  (PSR at ¶ 6).  Mr. Tissnolthtos sustained "a depressed frontal sinus fracture, a nasal fracture, skin lacerations to the face, multiple abrasions to his right hand, . . . a right lower extremity abrasion, a spine injury, and several broken ribs."  (PSR at ¶ 28).  Apparently, after assaulting Mr. Tissnolthtos, Defendant then left him unconscious and bleeding on the side of the road.  (*See* PSR at ¶ 6).  A member of the community discovered Mr. Tissnolthtos at approximately 6:00 P.M.  (*Id.*).  Mr. Tissnolthtos' injuries were so severe that a medical helicopter was required to transport him to a hospital in El Paso, Texas.  (*See id.*).  Mr. Tissnolthtos was hospitalized for six days and underwent facial surgery and surgery to relieve a hematoma, as well as orthopedic spinal surgery.  (PSR at ¶ 28).

Although the PSR noted that mandatory restitution applied, the PSR indicated that the victim had not verified the amount he claimed in lost wages and that Indian Health Services had not responded to repeated requests for medical expenses borne by the agency for the victim's treatment.  (*Id.* at ¶¶ 101-102).  Consequently, the PSR stated that "no information has been

2

received regarding possible restitution payments that may be owed." (*Id.* at ¶ 102). The PSR further stated, however, that "[u]pon receipt of said information, it will be forwarded to the Court for consideration." (*Id.*). The Court received no further communication from the Government or Probation regarding restitution until the first sentencing hearing on July 30, 2007.[2]

At the July hearing, the Court inquired whether a restitution amount had been established. (*See* July 30 Sentencing Hr'g Tr. [Doc. 48] at 10-11). The victim advocate, on staff with the U.S. Attorney's office, replied that the Government was having a difficult time locating the victim, that they were attempting to work through the victim's sister, and that there was an outstanding bill of about $80,000.00 from the hospital. (*Id.* at 11). The victim advocate then asked the Court if it "want[ed] to give 90 more days for restitution?" (*Id.*). The Court then noted that the script provided by Probation anticipated leaving the restitution question open. (*Id.*). Later in the proceeding, the Court stated:

> Pursuant to the Mandatory Restitution Act, restitution is applicable. However, there is insufficient information on the record at this time regarding possible restitution payments that may be owed. Therefore, I'm not going to order restitution at this time, but leave that matter open, pending the receipt of additional information. And Mr. Dolan can anticipate that such an award will be made in the future.

(*Id.* at 17). The Court filed its Judgment later that same day. (Judgment [Doc. 39] at 1). The Judgment did not include an amount of restitution. (*Id.* at 5). Rather, the Judgment stated:

> If this judgment imposes a fine or a restitution obligation, it shall be a condition of probation that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in

---

[2] The Court had originally scheduled sentencing for June 28, 2007, however, the Government requested a continuance that would allow the victim's sister to allocute at the sentencing hearing. (United States' Mot. Continue Sentencing [Doc. 35] at 1-2). The Court granted a continuance on June 29, 2007, and later set the hearing for July 30, 2007. (Order [Doc. 36] at 1; Notice Hr'g [Doc. 37]).

accordance with the Schedule of Payments set forth in the Criminal Monetary
Penalties sheet of the judgment.

                     *                   *                 *

        Pursuant to the Mandatory Restitution Act, restitution is applicable;
however, no information has been received regarding possible restitution
payments that may be owed.  Therefore, the Court will not order restitution at this
time.

(*Id.* at 3, 5).

On October 4, 2007, the probation officer prepared a Second Addendum to the PSR that
included detailed restitution information, and on October 5, 2007, her supervisor approved that
addendum.  (*See* 2nd Addendum to PSR at 1-2).  The Second Addendum indicated that
$105,559.78[3] was due to the United States Department of Health and Human Services for the
victim's medical care and treatment.  Although the Second Addendum notes that the Court
needed to decide the restitution matter by October 28, 2007 (*see id.* at 1), it is unclear when the
Court received the Second Addendum.  Moreover, neither party moved the Court to set a hearing
date.  Instead, on its own accord, the Court set a hearing for February 4, 2008.  (Notice of Hr'g
[Doc. 43]).

As mentioned above, Defendant questioned whether the Court retained jurisdiction over
the restitution issue at the February hearing because more than 90 days had elapsed since the
first sentencing hearing in July 2007.  (*See* Feb. 4 Sentencing Hr'g Tr. at 3).  On the
Government's motion, the Court ordered both parties to brief the matter.  (*See id.* at 4-5).
Although the Court ordered the parties to submit briefing within ten days of the February hearing
and expressly stated that the case should be re-calendared for mid-February (*id.* at 5), the

---

[3]  The parties later appeared to agree that the correct amount is $104,649.78.  (*See* Feb. 4 Sentencing Hr'g
Tr. at 2).

Government requested, and the Court granted, an extension of briefing time (Mot. Extension Time File Mem. Br. [Doc. 44] at 1-2; Order [Doc. 46] at 1).  Briefing concluded on March 5, 2008 (*see* United States' Mem. Br. [Doc. 53] at 5), and the Court set a final hearing for April 11, 2008 (Notice of Hr'g [Doc. 55]).  Unbeknownst to the Court, the Bureau of Prisons released Defendant on supervised release on March 20, 2008.  The Court discovered this fact during the April hearing.

II.     **DISCUSSION**

     A.     **Jurisdiction**

          1.     **Law**

Congress implemented the MVRA, 18 U.S.C. §§ 3663A-3664, under the auspices of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *United States v. Cheal*, 389 F.3d 35, 46 (1st Cir. 2004).  The MVRA amended the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, *see United States v. Moreland*, 509 F.3d 1201, 1222 (9th Cir. 2007), which permitted federal courts to issue discretionary orders of restitution, *United States v. Serawop*, 505 F.3d 1112, 1117 (10th Cir. 2007).   The MVRA provides:

> "*[n]otwithstanding any other provision of law*, when sentencing a defendant convicted of [a crime of violence[4]], the court *shall order*, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ."

18 U.S.C. §§ 3663A(a)(1), -(c)(1)(A)(i) (2008) (emphases added).  The order of restitution must include "the cost of necessary medical and related professional services."  *Id.* § 3663A(b)(2).  "The primary and overarching goal of the MVRA is to make victims of crime whole, to fully compensate . . . victims for their losses and to restore . . . victims to their original state of well-

---

    [4] Assault resulting in serious bodily injury is a crime of violence.  *See* 18 U.S.C. § 16(a) (defining crime of violence as "an offense that has as an element the use . . . of physical force against the person . . . of another.").

being." *Moreland*, 509 F.3d at 1222 (internal quotations omitted).  Furthermore, in Congress' specifically designated AEDPA legislative history, *Cheal*, 389 F.3d at 49 n.16, the Senate Judiciary Committee recognized that "justice cannot be considered served until full restitution is made," *id.* at 49.

Section 3664, the provision at issue in this case, sets out "the procedures for issuing and enforcing restitution orders."  *United States v. Stevens*, 211 F.3d 1, 4 (2nd Cir. 2000). Specifically, if restitution is still unascertainable ten days prior to a scheduled sentencing hearing, the Government attorney and/or the responsible probation officer have a duty to notify the court.  *See* 18 U.S.C. § 3664(d)(5) (2008).  Such communication reminds the court that it "shall set a date for the final determination[5] of the victim's losses, not to exceed 90 days after sentencing."  *Id.*  No such communication was received by the Court in this case.  The provision also permits victims to petition for further restitution for subsequently discovered losses.  *Id.* ("the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order.").

No court has definitively stated that § 3664(d)(5) is a jurisdictional statute.  In contrast, the First, Sixth, and Ninth Circuits have each stated that the statute is not jurisdictional.  *See Moreland*, 509 F.3d at 1224 (concluding that the defendant's jurisdictional argument failed because such a finding would undermine the statute's provision allowing restitution for subsequently discovered losses and stating that the MVRA neither confers nor terminates the court's jurisdiction); *Cheal*, 389 F.3d at 48 (finding that the provision allowing the victim to

---

[5] Every court to examine the meaning of "final determination" has concluded that the phrase indicates entry of the restitution order.  *E.g.*, *United States v. Dando*, 287 F.3d 1007, 1000 n.5 (10th Cir. 2002) (agreeing that "the provision that a victim may petition the court for an amended restitution order would have no meaning unless the order had been entered.").

recover subsequently discovered losses undermined the defendant's jurisdictional argument); *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000) ("Section 3664(d)(5) is not a jurisdictional statute.").  *See also United States v. Bogart*, 490 F. Supp. 2d. 885, 899 (S.D. Ohio 2007) (quoting *Vandeberg*, 201 F.3d at 814).  The Fourth Circuit also appears to follow this tack. *See United States v. Johnson*, 400 F.3d 187, 199 (4th Cir. 2005) (holding that "failure to comply with [90-day rule] . . .  provide[d no] basis for questioning . . . the restitution order.").

On the other hand, the United States Courts of Appeal have not reached a consensus on the true effect of the 90-day requirement.  Circuit courts differ over whether a district court has the authority to order restitution after the 90-day interval has elapsed.  Our own Tenth Circuit has indicated that a district court cannot modify a sentence based on its inherent authority. *United States v. Dando*, 287 F.3d 1007, 1009 (10th Cir. 2002).  Rather, the Tenth Circuit indicates that a district court's authority to order restitution after sentencing "derives solely from the statutory grant of jurisdiction in 18 U.S.C. § 3664(d)(5)."  *Id.* at 1009-10.  The *Dando* court also noted that because notice and time requirements in jurisdictional statutes are generally mandatory, district courts lack authority unless the parties have satisfied those requirements.  *Id.* at 1010.  Nevertheless, because of the procedural nature of the 90-day requirement, the Tenth Circuit has established that Section 3664(d)(5) is subject to equitable tolling[6] and that, so long as

---

[6] A number of other circuits also believe Section 3664(d)(5) may be subject to equitable tolling.  *See United States v. Farr*, 419 F.3d 621, 626 n.3 (7th Cir. 2005) (noting that their prior statement that Section 3664(d)(5)'s limits 'can sometimes be bent' meant that tolling may be available); *United States v. Zakhary*, 357 F.3d 186, 192 (2nd Cir. 2004) (acknowledging that the court had previously alluded to tolling, but expressing a preference for the harmless error approach); *United States v. Terlingo*, 327 F.3d 216 (3rd Cir. 2003) (concluding that the 90-day requirement is subject to equitable tolling where the delay is caused in significant part by the defendant); *United States v. Maung*, 267 F.3d 1113, 1121 (11th Cir. 2001) (asserting that the government might be correct in its statement that the statute is subject to tolling); *Stevens*, 211 F.3d at 5 ("we hold that the 90-day clock in § 3664(d)(5) may be tolled by the defendant's own purposeful misconduct."); *Bogart*, 490 F. Supp. at 898-99 ("[Defendant] cannot now use the fact that he did not pay the restitution ordered at the sentencing hearing to prevent the [c]ourt from modifying the order.").  No circuit, however, has tolled the statute in favor of the victim or those assisting the victim.

the court provides the defendant with the functional equivalent of the statutory procedure, a restitution order falling outside the 90-day requirement may stand.  *See id.* at 1010-11; *United States v. Reano*, 298 F.3d 1208 (10th Cir. 2002).  Although *Reano* acknowledges that Congress intended the MVRA to establish one consistent restitution procedure, 298 F.3d at 1212, both *Reano* and *Dando* illustrate that sufficient notice[7] is the functional equivalent of the statutory procedure set forth in Section 3664(d)(5),  *Reano*, 298 F.3d at 1212; *Dando*, 287 F.3d at 1010-11.  Moreover, in both cases, the Tenth Circuit recognized that the respective plea agreements accorded the defendant with at least some portion of the necessary notice.[8]  *See Reano*, 298 F.3d at 1209, 1212; *Dando*, 287 F.3d at 1010.  In fact, the Tenth Circuit has gone so far as to vacate and remand for resentencing, reinitiating the 90-day time period.[9]  *Reano*, 298 F.3d at 1212-13.

The Sixth, Seventh, and Eleventh Circuits have issued seemingly incongruous opinions regarding Section 3664(d)(5).  In 2000, the Sixth Circuit decided *Vandeberg*, 201 F.3d 805, which, while recognizing that the 90-day requirement was firm, also found that Section

---

[7]  Several other circuits have also taken notice into consideration when examining whether Section 3664(d)(5) has a preclusive effect, especially when conducting harmless error analysis.  *See Moreland*, 509 F.3d at 1225 (noting that the defendant knew restitution would be part of his sentence because the district judge stated it on the record during the original sentencing hearing); *United States v. Uhrich*, 228 F. App'x 248, 258 (4th Cir. 2007) (indicating that the court was unable to find reversible error where the defendant had notice of both the amount and recipient of the restitution); *United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006) ("[Defendant] was provided the functional equivalent of the notice required under Section 3664(d)(5) by the terms of his plea agreement."); *Johnson*, 400 F.3d at 199 ("[Defendant] had notice of the amount sought, and the court held a . . . hearing before entering the restitution order."); *Vandeberg*, 201 F.3d at 814 (noting that "the court provided [defendant] with ample opportunity to object to the amount[,] . . . scheduled a number of conferences on the subject, and . . . conducted an evidentiary hearing in which [the defendant] himself testified.").  *But see Maung*, 267 F.3d at 1121 (refusing to adopt government's argument that defendant was not prejudiced by the delay because he had a full opportunity to contest restitution at a later hearing).

[8]  In addition to the Ninth and Tenth Circuits, the Second Circuit also looks to the defendant's plea agreement when a restitution order falls outside the 90-day requirement.  *See Zakhary*, 357 F.3d at 188 (pointing out that the prosecution, via the plea agreement, had advised the defendant that he could be ordered to pay restitution); *United States v. Catoggio*, 326 F.3d 323, (2nd Cir. 2003) (reflecting plea agreement language that stated that "restitution was applicable, in an amount to be determined by the [c]ourt.").

[9]  Other circuits have also remanded cases that failed to meet the 90-day requirement.  *See  Cienfuegos*, 462 F.3d at 1161, 1169; *Farr*, 419 F.3d at 626 n.3 (noting that they could restart the 90-day period); *Zakhary*, 357 F.3d at 188, 191-94; *Catoggio*, 326 F.3d at 324, 329-30; *United States v. Kapelushnik,* 306 F.3d 1090, 1092, 1095 (11th Cir. 2002); *United States v. Grimes*, 173 F.3d 634, 640 (7th Cir. 1999).

3664(d)(5) was not jurisdictional and that failure to meet the 90-day requirement was harmless error. *See* 201 F.3d at 813-14. Despite *Vandeberg*, the court issued *United States v. Jolivette*, 257 F.3d 581 (6th Cir. 2001), less than a year later and pronounced that a district court's power to order restitution is circumscribed by Section 3664, that restitution ordered beyond the 90-day time limit is void, and that the statute demonstrates Congress' clear intent to "prohibit courts from making restitution determinations after the statutory period has run." 257 F.3d at 583-84.

The Seventh Circuit decided *United States v. Grimes*, 173 F.3d 634 (7th Cir. 1999), in 1999, and while acknowledging that the district court had exceeded its authority in not resolving the restitution matter within 90 days, the court vacated and remanded the case because Section 3664 "confer[s] rights on victims, not on criminals." *See* 173 F.3d at 639-40. Nevertheless, in *United States v. Farr*, 419 F.3d 621 (7th Cir. 2005), the court denied that it had ever concluded that a district court could disregard the 90-day requirement for the benefit of a victim. 419 F.3d at 625. Despite *Grimes*, the court expressed its belief that the 90-day requirement was unambiguous and, consequently, the court could not overlook the statute's plain language to further a broader statutory purpose. *Id.* In refusing to allow the district court to order restitution as a condition of supervised release over three years after the original sentencing, the court stated that the district court had exceeded its authority because district courts only have authority to grant restitution as expressly granted in the statute. *See id.* at 623, 625.

The Eleventh Circuit appears to have taken the firmest stance against allowing restitution after the 90-day period has elapsed. In *United States v. Maung*, 267 F.3d 1113 (11th Cir. 2001), the court found the language of Section 3664(d)(5) was clear and there was, therefore, no need to look into the intent behind the MVRA. 267 F.3d at 1121-22. The court went on to state that

Section 3664(d)(5) had a preclusive effect, unless the result would be absurd – not just unwise. *Id.* at 1122.  The court elaborated that an absurdity might occur when the defendant's bad faith caused the delay, but that a typical delay only resulted in an unwise result.  *Id.*  Despite *Maung,* however, the court decided *United States v. Kapelushnik*, 306 F.3d 1090 (11th Cir. 2002), the following year.  *Kapelushnik* vacated and remanded where the district court had not entered a restitution order within 90 days because the defendant had filed an appeal.  *Id.*

Though some circuits have asserted that the district courts must always meet the 90-day requirement, practically every circuit to examine the issue has acknowledged that Congress intended the requirement to protect victims, and those assisting the victims, from the dissipation of defendants' assets, not to promote finality for the defendant.  *See e.g.*, *Dando*, 287 F.3d at 1010 n.4; *Reano*, 298 F.3d at 1212 ("[Restitution] is . . . necessary to ensure that the offender . . . pays the debt owed to the victim as well as to society.").  Furthermore, Section 3664 grants defendants very few, if any, rights.  *See Grimes*, 173 F.3d at 639.  Indeed, Congress "did not relate the 90-day requirement to the interests of defendants."  *Cheal*, 389 F.3d at 49.  Rather, "the sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information."  *Id.* (quoting S. Rep. No. 104-179, at 18 (1995)).  *See also Moreland*, 509 F.3d at 1223-24.

Appellate courts generally review restitution orders for an abuse of discretion.  *E.g.*, *Reano*, 298 F.3d at 1210.  If assertion of jurisdiction is at issue, however, appellate courts will engage in de novo review.  *E.g.*, *Dando*, 287 F.3d at 1009.  Moreover, as alluded to above, several circuits then go on to engage in harmless error analysis because courts regularly deem sentencing errors that do not tread upon substantial rights as harmless.  *See Moreland*, 509 F.3d

at 1224-25 ("A presumption of harmlessness applies to any error in the timely identification of victims' losses."); *Johnson*, 400 F.3d at 199; *Zakhary*, 357 F.3d at 191-93; *Vandeberg*, 201 F.3d at 814.  *See also Farr*, 419 F.3d at 626 (refusing to determine if harmless error analysis applied because the parties did not sufficiently raise the issue).  In any such analysis, of course, the defendant must show prejudice resulting from the error.  *Zakhary*, 357 F.3d at 192.  If restitution is at issue, a defendant could show prejudice by alleging that documents and/or witnesses had become unavailable or that his financial status had substantially changed during the delay.  *Id.* at 192 n.5.

### 2.    The Court Retains Jurisdiction

While admitting that Section 3664(d)(5) is not an expressly jurisdictional statute (*see* Restitution Mem. [Doc. 47] at 3), Defendant nevertheless urges the Court to abide by the "plain language" of the statute and concede that the Court no longer has power to order Defendant to pay restitution  (*id.* at 2).  The Court, however, does retain jurisdiction that enables it to order Defendant to pay restitution.

As an initial point, Congress has moved the decision about whether to order restitution beyond the discretion of the Court.  Restitution for crimes of violence is mandatory.  18 U.S.C. §§ 3663A(a)(1), -(c)(1)(A)(i).  Moreover, as Defendant admits, no court has expressly found that 18 U.S.C. § 3664(d)(5) is a jurisdictional statute.  And while the Court acknowledges its error in not complying with the 90-day requirement, holding that the Court loses jurisdiction 90 days after sentencing would render the clause allowing victims to recover subsequently discovered losses meaningless.[10]  *See Cheal*, 389 F.3d at 48.  Additionally, the MVRA contains a clause

---

[10]  The Court does not believe this conflicts with the Tenth Circuit's holding that the Court's restitution jurisdiction derives solely from Section 3664(d)(5).  Though the provision admittedly sets out a 90-day requirement, the same provision also grants the Court continuing jurisdiction to deal with further victim losses.  The Court does

particularly called for in this situation: "[n]otwithstanding any other provision of law." 18 U.S.C. §§ 3663A(a)(1).

As for Defendant's plain language argument, the vast array of positions taken by the circuit courts is more than sufficient to establish that the statute's language is, in fact, ambiguous. Consequently, the Court must look to Congressional intent to decipher the true meaning of Section 3664(d)(5). *Contra Farr*, 419 F.3d at 625; Maung, 267 F.3d at 1121-22. Practically every circuit to examine Section 3664(d)(5), including the Tenth Circuit, has acknowledged that the 90-day time requirement is meant to protect the victim and, by extension, those assisting the victim – not the defendant. *See e.g.*, *Dando*, 287 F.3d at 1010 n.4. As a result, the section confers minimal rights upon the defendant. *See Moreland*, 509 F.3d at 1223-24; *Cheal*, 389 F.3d at 49. Those rights do not include the absolute right to have a finalized restitution order within 90 days of sentencing. *Cf. Cheal*, 389 F.3d at 49 ("the sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information."). Allowing a defendant to escape restitution simply because of a fortuitous chain of events would hardly serve the interests of justice. *See id.*

At oral argument, Defendant contended that the functional equivalent of Section 3664(d)(5) requires both notice and time limitations. (Apr. 11 Sentencing Hr'g Tr. at 3). The Tenth Circuit, however, has not found that the statute's functional equivalent must include a specified time element. *See Reano*, 298 F.3d at 1212; *Dando*, 287 F.3d at 1010-11. Notice serves as the functional equivalent of Section 3664(d)(5), *Reano*, 298 F.3d at 1212; *Dando*, 287 F.3d at 1010-11, and the Defendant certainly had notice that the Court would require him to pay

not believe that Congress intended to create a "gap" in jurisdiction.

12

restitution.  The plea agreement, the PSR, the initial sentencing hearing, the Judgment, and the Second Addendum to the PSR all provided notice to the Defendant during the 90-day period. The February and April hearings also provided the Defendant with further notice and opportunity to object, and the Defendant readily admits that he had notice.  (Apr. 11 Sentencing Hr'g Tr. at 5, 7).  Moreover, the Judgment clearly indicates that the defendant would be required to pay restitution on supervised release (Judgment at 3), and unlike in *Farr*, the Court is not ordering restitution more than three years after the original sentencing hearing.

Defendant also argues that the Court cannot assert jurisdiction because Defendant's actions did not toll the statute.  (Apr. 11 Sentencing Hr'g Tr. at 4-5).  Although both *Dando* and *Reano* involve some element of tolling, the Tenth Circuit has not absolutely required that a district court be confronted with a tolling situation to enable it to order restitution after the 90-day period has elapsed.  *See Reano*, 298 F.3d 1208; *Dando*, 287 F.3d 1007.  As mentioned previously, the Tenth Circuit does require the functional equivalent of statutory notice, and that is present in this case.  Additionally, the Court sees no reason why a defendant should reap the equitable benefits of a procedural requirement while the victim and those assisting the victim may not.

Lastly, at oral argument, Defendant could not show that he would suffer prejudice as the result of an untimely restitution order.  (Apr. 11 Sentencing Hr'g Tr. at 7).  He has not alleged that his financial situation has changed substantially, nor has he alleged that any documents or witnesses have become unavailable.  *See Zakhary*, 357 F.3d at 192 n.5.  If a presumption of harmlessness applies, Defendant has demonstrated no prejudice affecting his substantial rights. *See Moreland*, 509 F.3d at 1224-25.

13

Because restitution is mandatory for crimes of violence, because Congress intended Section 3664(d)(5) to protect victims and those assisting victims, because Defendant received the functional equivalent of statutory notice, and because Defendant is unable to demonstrate prejudice, the Court **CONCLUDES** that it **RETAINS JURISDICTION**.

### B.      Defendant's Ability to Pay

The MVRA requires a court to order full restitution "without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A) (2008).  The government bears the burden of establishing the victim's losses by a preponderance of the evidence.  *Id.* at § 3664(e).  The defendant bears the burden of "demonstrating [his] financial resources . . . and the financial needs of . . . [his] dependents" by a preponderance of the evidence.  *Id.*  Although a district court may not take the defendant's financial situation into account when determining the amount of restitution, the Court must take it into account when setting the payment schedule.  *See id.* at § 3664(f)(2)(A)-(C); *United States v. Ahidley*, 486 F.3d 1184, 1191-93 (10th Cir. 2007).  Specifically, the court must consider:

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2).  If, however, the court finds that the defendant's financial situation does not permit the payment of any restitution and does not permit the payment of full restitution "in the foreseeable future under any reasonable schedule of payments," the court may order "the defendant to make nominal periodic payments."  *Id.* at § 3664(f)(3)(B).

14

Defendant is thirty years old (*see* PSR at ¶ 62).  Before his incarceration, Defendant lived either at his parents' home or his girlfriend's home.  (*Id.* at ¶ 66).  Since his release, Defendant has lived with his elderly aunt and uncle who live on retirement assistance.  (Apr. 11 Sentencing Hr'g Tr. at 12).  His father is currently incarcerated, and his parents live on a limited income. (*Id.* at 12-13).

Defendant relies entirely on his aunt for his support.  (*Id.* at 13).  Defendant holds no assets, and his credit report reflects one outstanding balance for medical care.  (PSR at ¶¶ 83-84). It appears that Defendant's only income is half of his annual tribal stipend, $575.00, the other half having been previously assigned for the benefit of a minor child.  (Apr. 11 Sentencing Hr'g Tr. at 16-17).  Defendant dropped out of high school, but he did earn his G.E.D. during a prior incarceration.  (PSR at ¶ 77).  Defendant was unemployed at the time of this offense (*id.* at ¶ 78), and he currently remains unemployed (Apr. 11 Sentencing Hr'g Tr. at 14).  Defendant has apparently never held a steady job (PSR at 26; Apr. 11 Sentencing Hr'g Tr. at 11-12).

Defendant has one eleven-year-old daughter to whom he occasionally provided financial support before his incarceration.  (*Id.* at 13; PSR at ¶ 68).  Defendant also has another two-year-old daughter.  (Apr. 11 Sentencing Hr'g Tr. at 13; PSR at ¶ 69).  Since his release, Defendant has been unable to provide any financial support to his children other than the $575.00 that is provided to the eleven-year-old.  (Apr. 11 Sentencing Hr'g Tr. at 13-14; 16-17).

Defendant has been admitted for mental health evaluations on at least four occasions and has reportedly been diagnosed as bi-polar.  (*See* PSR at ¶¶ 71-73).  Defendant has also experienced severe substance abuse problems since at least the age of twelve.  (*See* PSR at ¶¶ 74-76).

15

Taking Defendant's aforementioned lack of financial resources, income, assets, and potential for future earnings into account, as well as noting the Defendant's obligations to his daughters, 18 U.S.C. § 3664(f)(2)(A)-(C), the Court finds that Defendant has established that his financial situation does not permit the payment of any significant amount of restitution now or in the foreseeable future, *id.* at § 3664(f)(3)(B).  Consequently, the Court hereby **ORDERS** the Defendant to pay $104,649.78 in restitution in nominal periodic payments.  *Id.*  These periodic payments shall take the form of a monthly $250.00 payment.

## III.    CONCLUSION

Because restitution is mandatory for crimes of violence, because Congress intended Section 3664(d)(5) to protect victims and those assisting victims, because Defendant received the functional equivalent of statutory notice, and because Defendant is unable to demonstrate prejudice, the Court **CONCLUDES** that it **RETAINS JURISDICTION**.  Moreover, because the Court finds that Defendant has established that his financial situation does not permit the payment of any significant amount of restitution now or in the foreseeable future, the Court hereby **ORDERS** the Defendant to pay $104,649.78 in restitution in nominal periodic payments of $250.00 per month.

        **IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

16